**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

Angela Cosgrove, individually and on behalf | 1:22-cv-00760
of all others similarly situated,

        Plaintiff,

   - against - | Class Action Complaint

Kashi Sales L.L.C.,

       Defendant, | Jury Trial Demanded

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.  Kashi Sales L.L.C. ("Defendant") manufactures, labels, markets, and chewy almond granola bars described as "Honey Almond Flax" under the Kashi brand ("Product").



2.      The front label tells consumers the Product is "Made With Wildflower Honey" across different hues of amber, evocative of honey, and has "3g Fiber" and "14g Whole Grains."

3.      When sold individually, the packaging also contains a picture of a small pool of honey, flax seeds, and almonds.



4.      These representations tell consumers that honey is its primary, significant or exclusive sweetening ingredient.

## I.      SUGAR INCREASINGLY DISFAVORED AS SWEETENER

5.      According to the National Institutes of Health ("NIH"), there is a direct link between excess sugar consumption and obesity.

6.      Doctors and nutritionists agree that excess sugar intake leads to as weight gain, Type 2 diabetes, dental caries, metabolic syndrome, heart disease, cancer, and even dementia.

7.      One food industry insider stated that "[consumer] demand for sugar reduction [cuts] across food and beverage categories."

8.      Speakers at the International Sweetener conference affirmed that "sugar avoidance was a macro trend 'that is here to stay and will only increase.'"

9.      Surveys by Information Resources, Inc. ("IRI") show that 58% of consumers are avoiding sugar, and over 80% are doing so for reasons related to health and weight issues.

10.     In place of sugar, consumers are increasingly seeking foods sweetened with honey.

11.    This is confirmed by data obtained from the USDA, showing that the volume of honey has almost doubled in the past 35 years, from 339 million to 603 million pounds.

12.    For the first time in history in 2020, honey surpassed white sugar as America's number one sweetener.

13.    At least 50% of consumers are willing to pay more for foods primarily sweetened with honey.

14.    Roughly 60% of consumers look for references to honey on a food's front label when deciding what to buy.

15.    There are several reasons why consumers seek foods sweetened with honey instead of sugar.

16.    First, almost three-quarters of consumers rate honey as "better-for-you" than sugar.

17.    Second, 93% of consumers recognize that honey is a natural sweetener, because unlike sugar, it is not heavily refined through harsh unnatural processes.

18.    According to the director of the National Honey Board, "Honey fits perfectly with consumers' desire to know where their food comes from and their preference for foods that are unprocessed," because it "is made by bees from the nectar of flowers."

19.    Third, honey has a lower glycemic index than sugar, causing slower fluctuations in blood sugar and insulin levels.

20.    Refined sugars lead to rapid spikes of blood sugar, with quick spurts of energy followed by sharp declines, characterized by tiredness, headaches, and difficulties in concentrating.

21.    Fourth, honey is sweeter than sugar, so less of it is needed to achieve the same level of sweetness.

22.    Fifth, unlike sugar, honey has small but significant amounts of nutrients such as vitamins, minerals, enzymes, phytonutrients and antioxidants.

23.    These benefits promote immunity and aid digestion.

## II.    PRODUCT CONTAINS SMALL AMOUNT OF HONEY

24.    The front label promotes honey as the main, exclusive or at least, a significant sweetening ingredient.

25.    The representations are false and misleading because the amount of honey is negligible and *de minimis*, shown through the ingredient list where honey is the eighth most predominant ingredient by weight.

**Ingredients:** Whole grain oats, brown rice syrup, almonds, dried brown rice syrup, brown rice flour, sunflower oil, flaxseeds, honey, oat fiber, glycerin, sea salt, molasses, natural flavor, rosemary extract for freshness, peanut flour.

**Ingredients:** Whole grain oats, brown rice syrup, almonds, dried brown rice syrup, cane sugar, brown rice flour, flax seeds, honey, sunflower oil, oat fiber, glycerin, sea salt, molasses, natural flavor, rosemary extract for freshness, peanut flour.

26.    The primary sweetening ingredients are not honey, but varieties of refined sugars, identified as "brown rice syrup, [] dried brown rice syrup, [and] cane sugar," the second, fourth and fifth ingredients.

27.    The Product contains slightly more honey than sunflower oil, the ninth most predominant ingredient.

28.    Brown rice syrup and dried brown rice syrup are known among manufacturers as heavily processed and refined "sugar substitutes."

29.    Like standard refined sugar, brown rice syrups have a high glycemic index and lack any nutrients.

30.    The front label fails to disclose the sweetener ingredients other than honey.

31.    In instructing companies about labeling blends of honey and other sweeteners, the Food and Drug Administration ("FDA") stated such products should "have a statement of identity that accurately describes the food, such as 'blend of honey and sugar,' 'blend of honey and corn syrup,' or another appropriately descriptive term."

32.    This informative and non-misleading front label is in addition to "an ingredient statement that lists each ingredient, such as 'honey' and 'sugar,' or 'honey' and 'corn syrup.'"

33.    This principle applies to the labeling of finished foods which utilize blends of honey and other sweeteners.

34.    By emphasizing the Product's honey content, through the product name, colors and "Made With Wildflower Honey," consumers expect a greater absolute and relative amount of honey compared to non-honey sweeteners.

35.    There is no functional barrier to producing a granola or snack bar which contains honey as the primary, significant or exclusive sweetening ingredient.

36.    This is shown through the snack bars made by HoneyBar, which state, "Ingredients Held Together Only With Honey" and list honey in the ingredients without other sweeteners.




37.     Defendant makes other representations and omissions with respect to the Product which are false and misleading.

38.     Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

39.     Had Plaintiff known the truth, she would not have bought the Product or would have paid less for it.

40.     As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $4.89 for a box of six 1.2 oz bars, excluding tax and sales, higher than similar products represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

Jurisdiction and Venue

41.     Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

42.    The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

43.    The Product has been sold at hundreds of locations in the states covered by the classes Plaintiff seeks to represent, with the representations challenged here, for several years.

44.    Plaintiff Angela Cosgrove is a citizen of Florida.

45.    Defendant Kashi Sales, L.L.C. is a Delaware limited liability company with a principal place of business in Battle Creek, Calhoun County, Michigan.

46.    The sole member of Defendant is Kellogg Sales Company, a Delaware corporation with a principal place of business in Battle Creek, Calhoun County, Michigan.

47.    Defendant is a citizen of Michigan.

48.    Plaintiff's citizenship of Florida is diverse from Defendant and its sole member, Kellogg Sales Company, citizens of Michigan.

49.    The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

50.    The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold for several years, with the representations described here, in hundreds of locations, in the States covered by Plaintiff's proposed classes.

51.    Venue is in this District because Defendant resides in this District and in the Southern Division because its principal place of business is in Calhoun County, and the decisions for the labeling of the Product occurred here.

<u>Parties</u>

52.    Plaintiff is a citizen of Pompano Beach, Florida, Broward County.

53.    Defendant Kashi Sales, L.L.C. is a Delaware limited liability company with a

principal place of business in Battle Creek, Michigan, Calhoun County.

54.    Defendant is a leading seller of organic and healthy snacks.

55.    Defendant's image is exemplified by its logo, with a stalk of wheat running across its company name, epitomizing the connection to farmers and healthy, natural ingredients.

56.    The Product is sold at tens of thousands of retail locations such as grocery stores, drug stores, big box stores, convenience stores, and online in the States covered by the classes Plaintiff seeks to represent.

57.    The Product is sold in boxes of various sizes, such as 6 bars, and individually.

58.    Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at locations including Target, 3200 N Federal Hwy, Fort Lauderdale, FL 33306, in 2021 and 2022, and/or among other times.

59.    Plaintiff believed and expected that the Product was made with honey as its primary sweetening ingredient instead of sugar and contained a non-*de minimis* amount of honey as an ingredient because that is what the representations and omissions said and implied.

60.    Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, claims, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

61.    Plaintiff is part of the 58% of consumers who are avoiding sugar and trying to consume less sugar, and part of the 80% who are doing so for reasons related to health issues.

62.    Plaintiff is one of the more than 50% of consumers who is willing to pay, and does pay, more for foods primarily or exclusively sweetened with honey or contain honey as a significant sweetening ingredient.

63.    Plaintiff is part of the 60% of consumers who look for references to honey on a food's front label when deciding what to buy.

64.    Plaintiff bought the Product at or exceeding the above-referenced price.

65.    Plaintiff paid more for the Product than she would have had she known the representations and omissions were false and misleading and would have paid less or not purchased it.

66.    Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components.

67.    The Product was worth less than what Plaintiff paid, and she would not have paid as much absent Defendant's false and misleading statements and omissions.

68.    Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations are consistent with its composition.

69.    Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance its representations are consistent with its abilities, attributes, and/or composition.

70.    Plaintiff is unable to rely on the labeling and representations not only of this Product, but other products which promote the use of honey, because she is unsure whether those representations are truthful.

<u>Class Allegations</u>

71.    Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Florida:** All persons in the State of Florida who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in

the States of Michigan, Arkansas, New Mexico, Wyoming, Kentucky, North Dakota, and Utah who purchased the Product during the statutes of limitations for each cause of action alleged.

72.    Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

73.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

74.    Plaintiff is an adequate representative because her interests do not conflict with other members.

75.    No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

76.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

77.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

78.    Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Florida Deceptive and Unfair Trade Practices Act,</u>
<u>Fla. Stat. § 501.201, *et seq.*</u>

<u>(Consumer Protection Statute)</u>

79.    Plaintiff incorporates by reference all preceding paragraphs.

80.    Plaintiff believed the Product contained a non-de minimis amount of honey and that honey was the primary, exclusive, or significant sweetening ingredient instead of sugar.

81.    Defendant's false, misleading, and deceptive representations and omissions are

material in that they are likely to influence consumer purchasing decisions.

82.   Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

83.   Plaintiff relied on the representations and omissions to believe the Product contained a non-de minimis amount of honey and that honey was the primary, exclusive, or significant sweetening ingredient instead of sugar.

<u>Violation of State Consumer Fraud Acts</u>

<u>(On Behalf of the Consumer Fraud Multi-State Class)</u>

84.   The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

85.   The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

86.   Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct.

87.   As a result of Defendant's use of artifice, and unfair or deceptive acts or business practices, the members of the Consumer Fraud Multi-State Class sustained damages.

88.   Defendant's conduct showed motive and a reckless disregard of the truth such that an award of punitive damages is appropriate.

<u>Breaches of Express Warranty,</u>
<u>Implied Warranty of Merchantability/Fitness for a Particular Purpose and</u>
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, <i>et seq</i>.</u>

89.   The Product was manufactured, identified, distributed, marketed, and sold by

Defendant and expressly and impliedly warranted to Plaintiff that it contained a non-de minimis amount of honey and that honey was the primary, exclusive, or significant sweetening ingredient instead of sugar.

90.    Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

91.    Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

92.    Defendant was aware of consumer demand for honey compared to sugar.

93.    Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it contained a non-de minimis amount of honey and that honey was the primary, exclusive, or significant sweetening ingredient instead of sugar.

94.    Defendant's representations affirmed and promised that it contained a non-de minimis amount of honey and that honey was the primary, exclusive, or significant sweetening ingredient instead of sugar.

95.    Defendant described the Product so Plaintiff and consumers believed it contained a non-de minimis amount of honey and that honey was the primary, exclusive, or significant sweetening ingredient instead of sugar, which became part of the basis of the bargain that it would conform to its affirmations and promises.

96.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

97.    This duty is based on Defendant's outsized role in the market for this type of Product,

a trusted company, known for its high-quality products with natural ingredients, honestly marketed to consumers.

98.    Plaintiff recently became aware of Defendant's breach of the Product's warranties.

99.    Plaintiff provides or will provide notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's express and implied warranties.

100.    Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

101.    The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

102.    The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it contained a non-de minimis amount of honey and that honey was the primary, exclusive, or significant sweetening ingredient instead of sugar.

103.    The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it contained a non-de minimis amount of honey and that honey was the primary, exclusive, or significant sweetening ingredient instead of sugar, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

104.    Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Fraud

105.  Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained a non-de minimis amount of honey and that honey was the primary, exclusive, or significant sweetening ingredient instead of sugar.

106.  The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

Unjust Enrichment

107.  Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

 **WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4.  Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5.  Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and

experts; and

6.  Other and further relief as the Court deems just and proper.

Dated:            August 20, 2022

Respectfully submitted,

/s/Spencer Sheehan
Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com